JOHN R. LOSEE, complainant,

*v.*

ARTHUR J. CALE et al., defendants.

[Decided March 28th, 1929.]

*Messrs. Lum, Tamblyn & Colyer,* for the complainant.

*Messrs. Stein, McGlynn & Hannoch,* for the defendants.

BACKES, V. C.

The bill is to foreclose a mortgage given by Arthur J. Cale to James R. Nugent, now deceased, for $7,600. The complainant holds it for Nugent's estate. The defense is want of consideration. Nugent conveyed the mortgaged premises to Cale January 4th, 1926, who on that day executed a mortgage to one Eisler for $35,000 and to Nugent the mortgage in suit; the latter recites that it was for purchase money. The $35,000 of the Eisler mortgage was used to pay off an outstanding mortgage and other charges, and the balance, $18,329, was paid to Nugent. Cale contends that at that time he owed Nugent no more than $11,000 plus; and this was more than satisfied by the $18,329, and that Nugent's estate now owes him the difference, approximately $7,000, and, consequently, the mortgage in suit was given without consideration. He explains that he executed the mortgage under protest, claiming at the time to Nugent that he owed him nothing but that Nugent owed him $13,000, and that he

signed upon Nugent's promise to state the account between them on his return from a vacation. Nugent returned sick, fatally stricken, and died without rendering an account. Cale is supported in his explanation by Turton, the attorney for Eisler, who paid Nugent the $18,329, he saying that Nugent refused the deed to Cale unless he signed the mortgage; that he would not admit Cale's claim, adding that he hadn't the time to go over the account; that he did not know how it stood and that he would state it on his return. Shortly after Nugent telegraphed Cale from Hot Springs for a renewal note, indicating that he was to account, saying, "will adjust on my return."

Nugent and Cale had had dealings since 1919. In that year Nugent agreed to sell to Cale the mortgaged premises,

| | | |
|---|---|---|
| a factory for .......................... | | $38,000.00 |
| Subject to mortgage ................. | $15,500 | |
| There was to be a down payment of .... | 500 | |
| Monthly installments of $500, ten installments a year, until there was paid, | 12,000 | |
| A mortgage was to be taken for ...... | 10,000 | |
| | | $38,000.00 |

The conveyance was to be made and the mortgage given when the installments were paid. In 1922 Nugent conveyed to Cale and took his mortgage for $10,000. On the same day Cale gave Nugent another mortgage for $9,210. He says it was a substitute; that he had paid $780 in excess of the installments and that there has been a miscalculation. Nugent foreclosed the latter mortgage and purchased at the sheriff's sale. He then conveyed to Cale and Cale gave the Eisler mortgage and the one now in dispute. Cale says Nugent foreclosed the mortgage to clear the title of later encumbrances, having agreed to purchase it at the sale and convey it to him, subject, of course, to Nugent's debts. A typewritten statement prepared by Nugent after he returned from the vacation was found among his effects and if correct justifies the mortgage. Cale's accountant, after exhaustive examination of all available data, could not adversely criticize

it. It was offered as evidence by the defense. In this account Cale is charged with the $10,000 mortgage and $2,350 interest from its date; notes of $8,127.10 and cash advanced and paid to the use of Cale, a total of $26,000 plus, and he is credited with the $18,329 Nugent received from the Eisler mortgage and the $7,600 mortgage in suit, and some rent, a total of $26,000 plus, showing a balance due to Cale of $360.90. Cale disputes the correctness of the statement. He challenges the $10,000 mortgage and interest item, claiming that it represented the "notes of $8,127.10;" that they are duplicate charges. He says that when he executed the bond and mortgage for $9,210 he also gave Nugent a note for that sum, representing the same debt, and that later he borrowed $2,500, giving him his note; that Nugent had the notes discounted at his bank and as they matured were reduced and renewed and finally reduced, the $9,120 note to $5,000, or $6,000; the $2,500 note to $1,800, and that he, Cale, paid the several amounts by which they were reduced and the discounts. Nugent's statement indicates that he, Nugent, paid some of them, and that he carried Cale's notes, $8,127.10, as there mentioned is conceded, and we have but the word of Cale as to their origin. Nugent was a man of wealth, not in need of an accommodation note, and it is permissible suggestion that perhaps the note had its inception in the payment period of the installments of the 1919 sales agreement. Cale was in modest circumstances and certainly slow of pay, if the pace at which he reduced his notes is a criterion. Cale has neither record nor voucher to support his assertions, nor Nugent to deny him. His records, he says, were destroyed by fire. He put Nugent's statement in evidence and at the trial repeatedly affirmed his confidence in Nugent's integrity, as well he might. Then, why not in his "dying declaration."

Cale's later conduct is significant. When Nugent's attorney called the mortgage in suit Cale responded that he was sorry he could not pay it and repeatedly asked for delay. Later, when another lawyer tried to collect he said he did not deny the obligation and offered to surrender his equity if

he could get a lease. Nugent was then living. At the trial Cale admitted offering to convey, adding, upon getting a five-year lease, rent free.

Assuming the oral testimony to be admissible to vary the obligation of the bond or to show the true consideration of the mortgage, the defendant has not furnished the quality of proof required to destroy his legally formal solemn undertaking. The bond and mortgage were not executed conditionally, to be effective upon a later showing that the debt existed, which might cast the burden of proof on the complainant, but arose upon a debt which the creditor maintained would be demonstrable by a statement of the mutual dealings. Nor does the fact that Nugent was lawyer and Cale sometimes his client shift the burden. The relation was that of creditor and debtor; the other, incidental and unrelated to the transaction.

The complainant is entitled to a decree.